UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIE M. JENKINS,<br><br>                Plaintiff,<br><br>      v.<br><br>JOSEPH NEE<br><br>and<br><br>DISTRICT OF COLUMBIA HOUSING AUTHORITY,<br><br>                Defendants. | Civil Action 07-01003 (HHK) |

**MEMORANDUM OPINION**

Plaintiff Willie Jenkins brings this action against his employer, the District of Columbia Housing Authority ("DCHA"), and his supervisor, Joseph Nee, in Nee's individual capacity, alleging discrimination under 42 U.S.C. §§ 1981 and 1983 (counts I, II, and III), intentional infliction of emotional distress (count IV), defamation (count V), intentional interference with contractual relations (count VI), and injunctive relief (count VII).

Before the court is defendants' motion for summary judgment [# 32].[1]  Jenkins does not dispute defendants are entitled to summary judgment on counts IV–VII. Upon consideration of the motion, the opposition thereto, the record of this case, and the parties' oral arguments of July 24, 2009, the court concludes that the motion must be granted.

---

[1] The court granted defendants' motion for summary judgment previously. The motion is before the court again following plaintiff's unopposed motion to reconsider.

## I.   FACTUAL BACKGROUND

Jenkins is a Black male who has worked for DCHA as a Utility Systems Operator since 2005. A "Utility Systems Repairer-Operator" has repair and maintenance responsibilities as well as a responsibility to "[p]erform other related duties as assigned." (Pl.'s Ex. 5 at 57–58 (Position Description).) Jenkins's second-level supervisor is Lyle Griffith; Jenkins's third-level supervisor is Joseph Nee. Since Nee was hired in 2005, Nee's assignments to Jenkins include cleaning boiler rooms and performing tasks late in the day in far reaches of the city, forcing Jenkins to work beyond regular hours. (Pl.'s Ex. 1 at 16, 17–18 (Jenkins Dep., Dec. 9, 2008).) Jenkins testified that only he and one other co-worker have ever been asked to complete such assignments. (Pl.'s Ex. 6 at 61 (Jenkins Aff.).)

Jenkins has also testified Nee used "racial overtones," and terms like "you people" and "boys" when speaking to Jenkins. (Def.'s Ex. 3 at 4–5 (Jenkins Dep., Jan. 23, 2009).) When asked to comment on how Nee's speech implicated Jenkins's race, Jenkins testified that "[i]t is the way [Nee] talked as somebody demeaning you. A white guy talking to a black guy in a racial way saying it. The wat [sic] he is using his words." (*Id.* at 5). But Jenkins also testified:

> [Jenkins's counsel:] Have you witnessed Joseph [Nee] act differently towards people not of color than he has towards people – I'm sorry, acted differently towards people with color than Caucasians?
>
> [Jenkins:] No, I haven't witnessed that.

(Def.'s Ex. 2 at 37 (Jenkins Dep., Dec. 9, 2008).) Nevertheless, around February 2007, Jenkins filed several Equal Employment Opportunity Commission ("EEOC") claims concerning these allegations. (Pl.'s Ex. 1 at 21 (Jenkins Dep., Dec. 9, 2008).)

Seven months later, two disagreements took place between Jenkins and Griffith. The first

was prompted by Jenkins's absence from his assigned duty station. (Pl.'s Ex. 1 at 26 (Jenkins Dep. Dec. 9, 2008); (Pl.'s Ex. 1 at 33 (Notice of Suspension).) The second took place later that afternoon in Griffith's office. Griffith stated that Jenkins entered the office and accused him of disrespecting Jenkins. Jenkins also threatened Griffith, and allegedly called him a "big dummy and faggot." (*Id.* at 33.) According to Griffith, a DCHA plumber had to pull Jenkins out of the office. (*Id.* at 34.) Jenkins testified he did not remember referring to Griffith as either "big dummy" or "faggot," but admits both he and Griffith "raised our voices." (Pl.'s Ex. 1 at 27 (Jenkins Dep., Dec. 9, 2008).)

On November 29, 2007, Griffith delivered a notice of disciplinary action to Jenkins, ordering Jenkins to serve a 14-day suspension due to "[u]se of abusive or offensive language or discourteous or disrespectful conduct toward the public or other employees." (*Id.* at 33 (Notice of Suspension).) In the notice, Griffith recounted the duty station absence and the confrontation in Griffith's office, and explained that "[d]ue to the fact that this is not the first time [Jenkins has] made threatening remarks toward me, it is necessary to take appropriate action." (*Id.* at 34.)

Jenkins filed complaints in this court alleging Nee and DCHA discriminated against Jenkins in his work assignments, then suspended Jenkins in response to his EEOC claims.

## II. ANALYSIS

Once there has been adequate time for discovery, a defendant may move for summary judgment at any time. Fed. R. Civ. P. 56(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must grant summary judgment if it concludes there is no genuine issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conversely, if there is sufficient *evidence* for a

reasonable jury to find for the non-moving party, the court must deny summary judgment; mere allegations, however, are insufficient to defeat the motion. *Id.* at 248, 255–56.

An employee bringing a claim under § 1981 or § 1983 must make a prima facie showing of discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989) (§ 1981 case applying *McDonnell Douglas*, superceded in part by the Civil Rights Act of 1991); *see also Jo v. District of Columbia*, 582 F. Supp. 2d 51, 60 (D.D.C. 2008) (§ 1983 case applying *McDonnell Douglas*). The employer can rebut this prima facie showing by presenting "some legitimate, nondiscriminatory reason" for the action in dispute. *McDonnell Douglas*, 411 U.S. at 802. The employee can then rebut the employer's showing by demonstrating that the asserted reason is pretextual. *Id*. at 805.

In determining whether to grant summary judgment, however, the D.C. Circuit has stressed that a court need not consider whether the employee has made a prima facie showing once the employer articulates a legitimate, non-discriminatory reason for the action in question. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493–494 (D.C. Cir. 2008).[2]  Under *Brady*, the only question before the court is:

> Has the employee produced sufficient *evidence* for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex or national origin?

*Id.* at 494 (emphasis added).

---

[2]  *Brady* involved a race discrimination claim; the D.C. Circuit has also applied *Brady* to retaliation claims. *See, e.g.*, *Jones v. Bernanke*, 557 F.3d 670, 672 (D.C. Cir. 2009).

The court has considered the record of the case, the motion for summary judgment, the opposition thereto, and the parties' oral arguments, and finds defendants are entitled to summary judgment. Jenkins alleges he was discriminated against and retaliated against when he was suspended, when he was ordered to clean boiler rooms, and when he was required to work beyond regular hours. DCHA has offered legitimate, non-discriminatory reasons for all these actions. Jenkins has not submitted evidence from which a reasonable jury could conclude these reasons were pretext. Accordingly, DCHA is entitled to summary judgment.

### III.   CONCLUSION

For the foregoing reasons, the court concludes that defendants' motion for summary judgment must be granted in full. An appropriate order accompanies this memorandum opinion.